USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 12/18/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
  Robert Steven Manning,

                            Plaintiff,        16 Civ. 9961

        -against-                      **OPINION AND ORDER**

  United States Department of Justice et al,

                           Defendants.
------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

    Plaintiff Robert Steven Manning, a dual U.S.-Israeli citizen currently incarcerated in Arizona, brings an action seeking to challenge the decision of the United States Department of Justice ("DOJ") to deny him transfer to Israel to serve the remainder of his life sentence. Manning, under the Declaratory Judgment Act or the All Writs Act, or in the alternative for writ of mandamus or for equitable estoppel, effectively seeks to compel his transfer to Israel. Defendants, various DOJ officials, seek to dismiss the action for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and for improper venue under Fed. R. Civ. P. 12(b)(4). Because the Court finds that Manning lacks standing, as detailed further below, the Court GRANTS Defendants' motion to dismiss.

**BACKGROUND**[1]

    In 1994, Manning was sentenced to life imprisonment after a conviction for murder by mail bomb in California. Compl. ¶ 13. Manning is currently serving a life sentence at a Bureau of Prisons facility in Phoenix. *Id.* ¶ 26. Since his imprisonment, the Federal Bureau of

---

[1] The following facts are taken from the Complaint and accepted as true for the purposes of this motion.

1

Investigations ("FBI") has sought information concerning a separate bombing that killed an individual named Alex Odeh, but Manning has consistently responded that he has no information concerning Odeh's death. *Id.* ¶¶ 14-19.

Manning, a dual U.S.-Israeli citizen, has "made numerous requests" for a transfer to serve the remainder of his sentence in Israel. *Id.* ¶ 22. The Israeli Government "at all times made it unequivocally clear that Israel would accept the transfer." *Id.* Despite written support from an Israeli government official, his previous requests have been denied. *Id.* ¶¶ 22-24.

On September 1, 2015, the DOJ approved Manning's request for transfer to Israel to serve the rest of his sentence. *Id.* ¶¶ 26-27 & Ex. 1. However, on October 16, 2015, the DOJ informed Manning that it was withdrawing the approval of the transfer until the DOJ reviewed additional information in order to make a determination. *Id.* ¶¶ 28-29 & Ex. 2. Since that period of time, the DOJ has neither made a determination on the transfer request nor updated Manning on the status of his request. *Id.* ¶ 30.

## STANDARD OF REVIEW

When deciding a motion for dismiss, whether for lack of subject matter jurisdiction (under Rule 12(b)(1)) or for failure to state a claim (under Rule 12(b)(6)), the court accepts the factual allegations in the complaint as true. *See, e.g., Tsirelman v. Daines*, 19 F. Supp. 3d 438, 446-47 (E.D.N.Y. 2014). The standard of review for 12(b)(1) motions is "substantively identical" to Rule 12(b)(6) motions, but the key difference is that the movant bears the burden of proof on a 12(b)(6) motion but the plaintiff invoking the court's jurisdiction bears the burden on a 12(b)(1) motion. *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003); *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 39 (2d Cir. 2015) ("The party invoking federal jurisdiction bears the burden of establishing prudential and constitutional standing…"). Dismissal for lack of

subject matter jurisdiction is proper when the district court "lacks the statutory or constitutional power to adjudicate" a case. *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013).

## DISCUSSION

<u>Governing Law and Treaty</u>

The transfer of prisoners held in the United States to serve the remainder of their sentences in other countries is governed by the Transfer of Offenders to or from Foreign Countries Act (the "Act"), 18 U.S.C. § 4100 *et seq.* Pursuant to the Act, the United States has the authority to transfer a prisoner to a foreign country "when a treaty providing for such a transfer is in force, and shall only be applicable to transfers of offenders to and from a foreign country pursuant to such a treaty." *Id.* § 4100(a). Only the Attorney General or a designated DOJ official is authorized to approve or disapprove individual transfer requests. *See id.* § 4102(1), (3), (11). The United States and Israel are parties to a covered treaty, the Convention on the Transfer of Sentenced Persons (the "Convention"), T.I.A.S. No. 10,824, 22 I.L.M. 530, 1983 WL 179013 (1983).

The Convention provides that an individual incarcerated in one country may "express his interest" in a potential transfer either to the "sentencing State" (*i.e.*, the country in which the sentence was imposed) or the "administering State" (*i.e.*, the country to which the transfer is sought). *Id.* arts. 1(c)-(d), 2(2). The actual transfer decision, however, requires the approval of both the sentencing and administering States, in addition to the prisoner. *Id.* art. 3(1)(d), (f). A transfer may be requested by the prisoner, the sentencing State, or the administering State. *Id.* art. 2(2)-(3). After a country receiving a request for transfer is notified of a request for transfer, the Convention requires that this country promptly inform the other State (usually the administering State) of its decision. *See id.* art. 5(4). The Convention does not provide any

3

guidelines or factors that either country must consider in determining whether a requested transfer is appropriate.

Analysis

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limits on its exercise." *United States v. Suarez*, 791 F.3d 363, 366 (2d Cir. 2015) (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004)) (internal quotation marks omitted). Plaintiff has the burden of showing standing. *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 84 (2d Cir. 2014). Article III or constitutional standing requires, *inter alia*, that plaintiff suffer "an injury in fact . . . which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 85 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). In contrast to constitutional standing, prudential standing prevents "litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Suarez*, 791 F.3d at 366 (internal quotation marks omitted).

As for constitutional standing, Manning cannot demonstrate an injury in fact, *i.e.* "an invasion of a *legally protected interest*." *Lujan*, 504 U.S. at 560 (emphasis added). As one court concluded, because neither the Convention nor the Act provide DOJ with "particularized standards or criteria to guide the Attorney General in making transfer decisions" and thus gives the DOJ unlimited discretion in making such decisions, individuals do not have a protected liberty interest in transfer. *Bagguley v. Bush*, 953 F.2d 660, 662 (D.C. Cir. 1991) (per curiam) (internal citations and quotations omitted); *see also Scalise v. Thornburgh,* 891 F.2d 640, 649 (7th Cir. 1989) (holding that 18 U.S.C. § 4102 of the Act did not raise a liberty interest protected under the due process clause in prisoners seeking international prison transfer). Accordingly,

4

because there is no legally protected interest in international prison transfer, Manning cannot demonstrate constitutional standing. *See Lan Xuan Dang v. Ask-Carlson*, No. 1:13–CV–32, 2013 WL 3424175, at *2 (W.D. La. July 8, 2013).

Although the inquiry may end there, Manning cannot show prudential standing either, as there is no private right of action to compel a transfer under the Convention. *See Yosef v. Killian*, 646 F. Supp. 2d 499, 506-07 (S.D.N.Y. 2009). "Whether a treaty creates a right in an individual litigant that can be enforced in domestic proceedings by that litigant is for the court to decide as a matter of treaty interpretation." *Mora v. New York*, 524 F.3d 183, 193 (2d Cir. 2008). A treaty is generally an agreement between two independent nations. *Id.* at 200. Treaties, thus, "establish rights and obligations between State-parties—and generally not between states and individuals, notwithstanding the fact that individuals may benefit because of the treaty's existence." *United States v. Barinas*, 865 F.3d 99, 104-05 (2d Cir. 2010) (quoting *Mora*, 524 F.3d at 200). Absent a private enforceable right created by treaty, an individual lacks standing to challenge an alleged violation of that treaty, without a protest or objection from the offended nation. *See Suarez*, 791 F.3d at 367.

There is nothing in the text of the Convention that provides an individual inmate with a privately enforceable right to seek transfer. *See Mora*, 524 F.3d at 194 (interpreting a treaty begins with the text and the surrounding circumstances in which the words are being used). "[T]he Convention never *requires* a state to transfer a prisoner"; rather, "the agreement only allows transfer when all three parties (the prisoner and both states) agree to it." *Toor v. Holder*, 717 F. Supp. 2d 100, 107 (D.D.C. 2010) (citing Convention art. 3(1)(d) & (f)). Accordingly, the Convention does not provide a private right of action. *See, e.g., Toor*, 717 F. Supp. 2d at 107; *Yosef*, 646 F. Supp. 2d at 507; *Lan Xuan Dang*, 2013 WL 3424175 at *3; *United States ex rel.*

*Rickard v. Sternes*, 149 F. Supp. 2d 437, 451 (N.D. Ill. 2001) ("[T]he Convention imparts no individual right upon prisoners to obtain a transfer."). The Convention requires that the sending and receiving countries consent to the transfer, and the DOJ has withdrawn its approval of the transfer. The benefit that Manning was granted before being revoked was just that: a benefit, but not an entitlement. *Mora*, 524 F.3d at 195 (observing the vocabulary of "individual rights" may be used to refer to certain potential benefits provided by treaty that do not actually create rights enforceable by the individuals benefitted). Manning lacks standing and is thus without recourse to remedy his grievance.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss under Rule 12(b)(1) is granted. The case is dismissed in its entirety.

**SO ORDERED.**

**Dated:** December 15, 2017
New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**